ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| VÍCTOR I. DEL PILAR RODRÍGUEZ EN REPRESENTACIÓN DE CARMEN RODRÍGUEZ NIEVES<br><br>Recurrida<br><br>v.<br><br>PEDRO L. DEL PILAR RODRÍGUEZ<br><br>Peticionaria | KLCE202401171 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm.: BYL1212024-05748<br><br>Sobre:<br>Ley 121 de 12 de julio de 1986 |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de diciembre de 2024.

I.

El 12 de julio de 2024 la Sra. Carmen Rodríguez Nieves -de 89 años-, instó una *Petición de Orden de Protección Para el Adulto Mayor* por medio de sus hijos, Víctor I. y Edna M., ambos, Del Pilar Rodríguez, en contra de su hijo y hermano mayor, el Sr. Pedro L. Del Pilar Rodríguez.[1] Luego de varios trámites procesales y citadas las partes, se celebró vista el 25 de septiembre de 2024.

En la referida vista, los hermanos Del Pilar Rodríguez sostuvieron que su hermano Pedro L. incumple con su responsabilidad de pagar los servicios esenciales[2] de su madre, y

---

[1] En la *Petición de Orden de Protección Para el Adulto Mayor* se marcaron los siguientes encasillados: "[m]e ha causado daño a mi salud mental, bienestar, integridad o a mis bienes", "[m]e ha expuesto al riesgo de sufrir daño a mi salud, bienestar, integridad o a mis bienes", "[m]e ha provocado temor de sufrir daño físico o psicológico mediante el uso de la intimidación, presión, coacción o amenazas o de cualquier otra forma ha interferido con el ejercicio de los derechos que se le reconocen a la parte peticionaria en esta Ley", "[m]e ha privado de tener descanso adecuado y disfrutar de un ambiente de tranquilidad y solaz, "[n]o me provee alimentación o cuidado físico o mental adecuado", "[m]e ha privado de mis recursos económicos mediante intimidación, coacción o amenazas".
[2] Servicios esenciales como: a) sistema de energía eléctrica, b) sistema de acueductos y alcantarillados y c) sistema de Liberty.

que la carga mayor sobre el cuidado de esta recae sobre ellos a pesar de que es Pedro L. quien vive con ella. Testificaron que los problemas de incumplimiento de pago de los servicios esenciales comenzaron en el año 2020 desde que Pedro L. se mudó a vivir con su madre.[3] Según estos, el servicio de agua fue desconectado por el periodo de una (1) semana por falta de pago,[4] y temen que la energía eléctrica igualmente se interrumpa ya que la deuda asciende a $1,500.[5] Afirmaron que, a pesar de que Pedro L. cuenta con un ingreso mensual suficiente, no paga las deudas antes mencionadas,[6] ha realizado pagos con cheques sin fondos,[7] y no compra alimentos para el hogar.[8] Aseguraron que su hermano Pedro L. "controla mucho a su mamá quien padece de demencia senil".[9]

Por su parte, Pedro L. sostuvo que él cuida de su madre y arguyó que tiene muchas deudas.[10] Aceptó haber realizado pagos con cheques sin fondos dado a un problema con la fecha del depósito de su retiro, pero se comprometió a pagar la deuda del servicio de energía eléctrica en cuanto reciba el próximo depósito.[11] Se comprometió a pagar la deuda de los servicios de acueductos y alcantarillados la próxima semana.[12]

En la vista, el Departamento de la Familia recomendó que se pagaran las deudas de los servicios de agua y energía eléctrica.[13] Añadió que, aunque Doña Carmen no expresó quejas de maltrato, la interrupción de los servicios esenciales por falta de pago

---

[3] *Vista de Orden de Protección celebrada el 25 de septiembre de 2024*, en 23:36-24:05, Civil Núm. BYL1212024-05748.
[4] *Id.* en 07:38-08:08.
[5] *Id.* en 06:46-06:54.
[6] "Él tiene el ingreso de más de $4,300 que cobra mensual y nunca tiene ni un centavo de momento para pagar nada. . .él le pide prestado a muchas personas y no les paga". *Id.* en 09:29- 10:07.
[7] *Id.* en 16:40-7:20.
[8] *Id.* en 13:58-14:00.
[9] *Id.* en 11:40-12:15.
[10] *Id.* en 20:28-20:52.
[11] *Id.* en 22:29-23:01.
[12] *Id.* en 24:55-25:02.
[13] *Id.* en 08:30-09:14.

"redundaría en negligencia hacia la adulta mayor".[14] De otra parte, para la Oficina del Procurador de Persona de Edad Avanzada (OPPEA), podría "deducir[se], por lo que se ha expresado, [que] también puede haber sospecha de explotación financiera. Toda vez que el adulto mayor no compra alimentos, se está beneficiando de la vivienda. . .o sea, él se está aprovechando porque. . .está viviendo en casa de su mamá".[15] Reiteró que, la prioridad no son las deudas contraídas sino el bienestar de Doña Carmen y que esta situación presenta diferentes tipos de maltratos.[16]

Luego de escuchar a las partes y evaluar la prueba, el Foro Primario determinó que existe negligencia y sospecha de explotación financiera de parte del Sr. Pedro L. Del Pilar Rodríguez. A esos efectos, dictó *Orden de Protección Para el Adulto Mayor* en contra del señor Del Pilar Rodríguez por un término de seis (6) meses. Inconforme, el 24 de octubre de 2024, el señor Pedro L. recurrió antes nos mediante recurso de *Certiorari*. Plantea:

> **Primer error:**
> **ERRÓ EL TPI AL EXPEDIR UNA ORDEN DE PROTECCIÓN EN CONTRA DEL COMPARECIENTE SIN HABER CUMPLIDO CON LAS DISPOSICIONES DE LA LEY NÚM. 121 DEL 12 DE JULIO DE 1986, MEJOR CONOCIDA COMO LEY DE LA CARTA DE DERECHOS Y LA POLÍTICA PÚBLICA DEL GOBIERNO A FAVOR DE LOS ADULTOS MAYORES.**
>
> **Segundo Error:**
> **ERRÓ EL TPI AL EXPEDIR UNA ORDEN DE PROTECCIÓN EN CONTRA DEL COMPARECIENTE EN VIOLACIÓN AL DERECHO A UN DEBIDO PROCESO DE LEY, AL DERECHO CONSTITUCIONAL A LA VIDA Y A LA PROPIA LEY DE LA CARTA DE DERECHOS Y LA POLÍTICA PÚBLICA DEL GOBIERNO A FAVOR DE LOS ADULTOS MAYORES, MISMA LEY QUE CITÓ PARA VIOLENTAR LO[S] DERECHOS AL COMPARECIENTE.**

El 12 de noviembre de 2024 ordenamos a la Secretaría del Tribunal de Primera Instancia, Sala de Bayamón, a que en cinco (5)

---

[14] *Id.* en 18:58-20:00.
[15] *Id.* en 29:48-30:33.
[16] *Id.* en 30:57-32:35.

días remitiera a nuestra atención, en calidad de préstamo, los autos originales del caso BYL1212024-05748, así como la regrabación de la vista llevada a cabo el 25 de septiembre de 2024. El 21 de noviembre, recibimos los autos originales y el 2 de diciembre se presentó *Moción de Comparecencia Especial* y el audio solicitado fue enviado por la plataforma "One Drive". Contando con el beneficio de las comparecencias de las partes, el audio de la vista, el expediente y el Derecho aplicable, resolvemos.

II.

A.

La Carta de Derechos y la Política Pública del Gobierno a Favor de los Adultos Mayores, Ley Núm. 121-2019, según enmendada, acentúa como corolarios la dignidad de los adultos mayores y la protección de los derechos de esta población.[17] Dicha ley declara como política pública del Gobierno de Puerto Rico la participación y la integración social de los adultos mayores -persona de sesenta (60) años o más-,[18] como un valioso activo para nuestro país, impactando su calidad de vida positivamente a través de servicios ágiles, eficientes y accesibles.[19]

Este estatuto Núm. 121-2019 contempla "promover el valor, integración y el respeto del adulto mayor en nuestra sociedad mediante la protección de su salud física o mental y la propiedad contra amenazas, hostigamiento, coacción o perturbación por parte de cualquier persona".[20] Asimismo, dispone que se debe propiciar "el acceso a la justicia para que los adultos mayores puedan hacer uso equitativo de los mecanismos y procesos establecidos para prevenir la violación de sus derechos individuales, resolver

---

[17] Exposición de motivos de la Carta de Derechos y la Política Pública del Gobierno a Favor de los Adultos Mayores, Ley Núm. 121-2019 (2019 [Parte 2] LPR 1805-1807).
[18] 8 LPRA § 1513.
[19] *Id.* § 1512.
[20] *Id.*

controversias y obtener remedios legales".[21] Cónsono con lo anterior, el Gobierno reconoce como derechos de los adultos mayores, los siguientes:[22]

xi. Disfrutar de un ambiente de tranquilidad y solaz.

xii. Recibir protección y seguridad física y social contra abusos físicos, emocionales o presiones psicológicas por parte de cualquier persona.
. . . .

xxii. A la protección contra toda modalidad de abandono, explotación, de aislamiento y de marginación.
. . . .

xxiv. Vivir libre de presiones, coacciones y manipulaciones por parte de familiares, personas particulares, empresas privadas o del Estado, con el propósito de explotación financiera o que estén dirigidas a menoscabar su capacidad y su derecho a la autodeterminación.

xxv. Vivir en un ambiente de tranquilidad, respeto y dignidad que satisfaga las necesidades básicas de vivienda, de alimentación, de salud y económicas, con atención a sus condiciones físicas, mentales, sociales, espirituales y emocionales.[23]

Del mismo modo, el Art. 6 de la precitada Ley delimita las responsabilidades y deberes de los familiares, tutor legal o persona responsable del adulto mayor.[24] Enfatiza que estos deberán cumplir su función social y proporcionar los elementos necesarios para su atención integral.[25] En lo pertinente, la Ley Núm. 121-2019 define "maltrato" como:

---

[21] *Id.*
[22] *Id.* § 1514.
[23] *Id.*
[24] *Id.* § 1516.
[25] Serán responsables de: a) Otorgar alimentos de conformidad con lo establecido en legislación vigente. Incluyendo, pero sin limitarse, a atender las necesidades que pudieran presentársele a la persona adulto mayor, tales como: renovarle la ropa que él requiera, proporcionarle los cambios de ropa que se amerite de acuerdo con las condiciones del clima, entorno u otros factores relacionados. Asimismo, se le proveerá calzado, artículos para el uso y cuidado personal, medicamentos y todo aquello que sea necesario para que su estancia en el establecimiento responda a su mejor bienestar. . . . d) Evitar que alguno de sus integrantes realice cualquier acto de abandono, desamparo, marginación, discriminación, abuso, explotación, aislamiento, violencia o los que pongan en riesgo su persona, bienes y derechos. e) Otorgar una estancia digna, adecuada a sus necesidades, de preferencia en el propio domicilio o en instalaciones de cuido asistencial. . . . p) Cuando así sea necesario, a fin de preservar su salud física, emocional y mejor bienestar, llevar a la persona adulto mayor a sus citas o visitas médicas. q) En la eventualidad de un escenario de negligencia o maltrato, bien sea porque la persona adulto mayor lo exprese, se evidencie físicamente o por sospecha, será deber del familiar

"[T]rato cruel o negligente a un adulto mayor por parte de otra persona, que le cause daño **o lo exponga al riesgo** de sufrir daño a su salud, su bienestar o a sus bienes. El maltrato a los adultos mayores incluye: abuso físico, **emocional, financiero, negligencia,** abandono, aislamiento, agresión, robo, apropiación ilegal, amenaza, fraude, violación de correspondencia, discrimen de edad, restricción de derechos civiles, explotación y abuso sexual, entre otros. El maltrato puede darse por **acción o por omisión** y puede ser perpetrado por un familiar, amigo, conocido o desconocido".[26]

Además, define "negligencia" como "un tipo de maltrato que consiste en **faltar a los deberes o dejar de ejercer las facultades de proveer <u>adecuadamente</u> los alimentos, ropa, albergue, cuidado o atención médica a un adulto mayor**".[27] Respecto al concepto de "explotación financiera" la Ley dispone que se trata "**[d]el uso impropio** de los fondos, de la propiedad, **o de los recursos de un adulto mayor por otra persona**, incluyendo, pero no limitándose a, fraude, falsas pretensiones, malversaciones de fondos, conspiración, falsificación de documentos, falsificación de expedientes o récords, coerción, transferencia de propiedad, o negación de acceso a bienes".[28]

A tenor con el Art. 9 de la Ley Núm. 121-2019 cualquier persona adulta mayor que haya sido víctima de cualesquiera tipos de abandono o maltrato, o de conducta constitutiva de delito podrá "radicar por sí, por conducto de su representante legal, por un agente del orden público, por tutor legal, por funcionario público o por cualquier persona particular interesada en el bienestar de la persona adulta mayor una orden de protección en el tribunal".[29] Por ello, cuando el tribunal determine que "existen motivos suficientes para creer que la parte peticionaria ha sido víctima de maltrato físico, mental o psicológico, hostigamiento, coacción, intimidación,

---

realizar todas las gestiones para notificar el particular al Departamento de la Familia a través de su Línea de Emergencias. *Id.*

[26] *Id.* (Énfasis nuestro).

[27] *Id.* § 1513 (Énfasis nuestro).

[28] *Id.* (Énfasis nuestro).

[29] *Id.* § 1519.

daño emocional o cualquier otro delito, podrá emitir una orden de protección ex parte o a solicitud de parte interesada".[30]

Respecto al procedimiento para solicitar la orden de protección, el Art. 11 de la Ley 121-2019 dispone:

> Cualquier persona podrá solicitar los remedios civiles que establece esta ley para sí, o a favor de cualquier otra persona, cuando esta sufra de incapacidad física o mental, en caso de emergencia o cuando la persona se encuentre impedida de solicitarla por sí. El derecho a solicitar los remedios aquí establecidos no se verá afectado, porque la parte peticionaria haya abandonado su residencia para evitar el maltrato o ser víctima de cualquier otro delito.
>
> (a) *Inicio de la acción:* el procedimiento para obtener una orden de protección se podrá comenzar a través de alguna de las siguientes instancias:
>
>> (1) mediante la radicación de una petición verbal o escrita; o
>> (2) dentro de cualquier caso pendiente entre las partes, o
>> (3) a solicitud del Ministerio Fiscal en un procedimiento penal, o como una condición para una probatoria o libertad condicional.[31]}

### B.

En repetidas ocasiones el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción es el más poderoso instrumento reservado a los jueces.[32] La discreción se nutre "de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al

---

[30] "Dicha orden podrá incluir, sin que se entienda como una limitación, lo siguiente: (a) Ordenar a la parte peticionada desalojar la residencia que comparte con la parte peticionaria, independientemente del derecho que se reclame sobre la misma. (b) Ordenar a la parte peticionada abstenerse de molestar, hostigar, perseguir, intimidar, amenazar o de cualquier otra forma interferir con el ejercicio de los derechos que se le reconocen en esta Ley. (c) Ordenar a la parte peticionada abstenerse acercarse o penetrar en cualquier lugar donde se encuentre la parte peticionaria cuando a discreción del tribunal dicha limitación resulte necesaria para prevenir que la parte peticionada moleste, intimide, amenace, perturbe la tranquilidad o de cualquier otra forma interfiera con la parte peticionaria. . . .(h) Ordenar al dueño o encargado de un establecimiento residencial u hospitalario, donde se encuentre la parte peticionaria, a tomar las medidas necesarias para que no se viole la orden o cualquier parte de esta". *Id.*
[31] *Id.* § 1521.
[32] *Rodríguez* v. *Pérez*, 161 DPR 637, 651 (2004); *Banco Metropolitano* v. *Berríos*, 110 DPR 721, 725 (1981).

antojo o voluntad de uno, sin tasa ni limitación alguna".[33] Asimismo, "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho".[34] En *Pueblo* v. *Rivera Santiago,*[35] el Alto Foro local indicó que existen ciertas guías para determinar cuándo un tribunal abusa de su discreción y, en torno a este particular, estableció que:

> [U]n tribunal de justicia incurre en un abuso de discreción, *inter alia*: cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[36]

En el marco de esa doctrina, debemos tener presente el alcance de nuestro rol como Foro Apelativo al intervenir precisamente con la discreción judicial. Así pues, es norma reiterada que este Foro no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, "salvo que se demuestre que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad".[37]

Igualmente, destacamos la normativa de que las determinaciones de hechos que hace el juzgador [o la juzgadora] del Tribunal de Primera Instancia, merecen nuestra mayor deferencia y no debemos descartadas arbitrariamente ni sustituirlas por nuestro criterio, en ausencia de error manifiesto, pasión, prejuicio o parcialidad.[38] Esta norma descansa en que el juzgador de los hechos

---

[33] *Pueblo* v. *Hernández García,* 186 DPR 656, 684 (2012) (citando a *Santa Aponte* v. *Srio. del Senado*, 105 DPR 750, 770 (1977)); *HIETel* v. *PRTC*, 182 DPR 451, 459 (2011).
[34] *Pueblo* v. 186 DPR pág. 684 (citando a *Bco. Popular de P.R.* v. *Mun. de Aguadilla*, 144 DPR 651, 658 (1997)).
[35] *Pueblo* v. *Rivera Santiago*, 176 DPR 559, 580 (2009).
[36] *García* v. *Padró*, 165 DPR 324, 336 (2005); *Pueblo* v. *Ortega Santiago*, 125 DPR 203, 211 (1990).
[37] *Trans-Oceanic Life Ins.* v. *Oracle Corp.*, 184 DPR 689, 709 (2012) (citando a *Lluch* v. *España Service Sta.*, 117 DPR 729, 745 (1986)).
[38] *Colón* v. *Lotería,* 167 DPR 625, 659 (2006); *Argüello* v. *Argüello*, 155 DPR 62, 78-79 (2001).

está en mejor posición para evaluar la prueba porque vio y escuchó declarar a los testigos y apreció su *demeanor*.[39]

## III.

En el caso de marras, el Sr. Pedro L. Del Pilar Rodríguez sostiene que incidió el Tribunal de Primera Instancia al expedir una *Orden de Protección Para el Adulto Mayor* en su contra. Sin embargo, en su recurso no expresa razón suficiente ni específica alguna que nos mueva a determinar que el Foro primario erró al sopesar la prueba vertida en la vista. Falló en demostrar que dicho Foro actuó con pasión, prejuicio, parcialidad o incurrió en un error manifiesto.

Por el contrario, evaluado el recurso consideramos que el Foro recurrido actuó, no solo dentro de los parámetros discrecionales que le rigen, sino de conformidad a los mandatos de la Ley Núm. 121-2019. Es decir, resguardó el derecho de vivir en un ambiente de tranquilidad, respeto y dignidad que satisfaga las necesidades básicas de vivienda, de alimentación, de salud y económicas de Doña Carmen. Es importante notar, que, conforme el estatuto protector antes citado, el maltrato abarca el trato negligente a un adulto mayor por parte de un familiar que le cause daño o lo exponga al riesgo (por acción u omisión) de sufrir daño a su salud, su bienestar o a sus bienes. Lo anterior incluye, por ejemplo: el abuso emocional, financiero, y negligencia. Particularmente, tanto el Departamento de la Familia como la OPPEA coinciden en que el Sr. Pedro L. Del Pilar Rodríguez incurrió en negligencia al incumplir con su responsabilidad de pagar los servicios esenciales de su madre.[40] Procede la *confirmación* del dictamen recurrido.

---

[39] *López Vicil* v. *ITT Intermedia, Inc.*, 142 DPR 857, 865 (1997).
[40] *Vista de Orden de Protección celebrada el 25 de septiembre de 2024*, en 18:58-20:00 y en 30:57-32:35, Civil Núm. BYL1212024-05748.

IV.

Por los fundamentos que anteceden, *expedimos* el Auto de *Certiorari* y *confirmamos* el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones